NOT FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
APPELLATE DIVISION

MICHAEL TURBE,                        )
                                      )
                Appellant,            )  D.C. Crim App. No. 2005-34
                                      )
            v.                        )
                                      )
GOVERNMENT OF THE VIRGIN ISLANDS,     )
                                      )
                Appellee.             )
_____)

On Appeal from the Superior Court of Court of the Virgin Islands
Superior Court Judge: The Honorable Ive Arlington Swan

Considered: July 31, 2009
Filed: August 6, 2009

BEFORE:   **RAYMOND L. FINCH**, District Court of the Virgin Islands;
          **JUAN R. SANCHEZ**, Judge of the District Court, Eastern
          District of Pennsylvania, Sitting by Designation; and
          **JULIO A. BRADY**, Judge of the Superior Court of the
          Virgin Islands, Sitting by Designation.

ATTORNEYS:
**Leslie L. Payton, TPD**
St. Thomas, U.S.V.I.

**Maureen Phelan, AAG**
St. Thomas, U.S.V.I.

## MEMORANDUM OPINION

PER CURIAM,

    Following a jury trial in the Superior Court of the Virgin
Islands, Division of St. Thomas and St. John (the "Superior

Court"),[1] Michael Turbe ("Turbe") was found guilty of a number of
crimes including kidnaping, aggravated rape, burglary and
attempted murder. Turbe now appeals his conviction and sentence.
For the reasons set forth below, we will affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of February 25, 2003, Pamela Hagley
("Hagley") heard someone calling her name outside her apartment
in the Hospital Ground area of, St. Thomas, U.S. Virgin Islands.
A young man, later identified as Turbe, was outside. Turbe,
claiming to be the son of Hagley's co-coworker, Carol Williams,
said that his car had stalled in the street and asked to use
Hagley's telephone. Hagley offered to make the call for him.
Turbe insisted on coming inside Hagley's apartment so that he
could personally make the phone call. Hagley refused, and told
Turbe that he could catch a ride at the intersection up the
street.

The next day, February 26, 2003, Hagley spent the morning at
work and returned home for lunch. As she entered her apartment,
she was accosted by Turbe, who was holding a large butcher knife.
Though Turbe was covering the lower part of his face, Hagley

---

[1] At all times relevant to this appeal, the trial court was
known as the Territorial Court of the Virgin Islands and its
judges were referred to as Territorial Court Judges. Effective
January 1, 2005, however, the name of the Territorial Court
changed to Superior Court of the Virgin Islands. *See* Act of
Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687
(2004). Recognizing this renaming, we employ the terms Superior
Court and Superior Court Judge.

recognized him as the man outside her apartment the previous
evening.

Hagley later testified that Turbe lead her into her bedroom,
forced her onto a bed, and raped her. Afterwards, the attacker
told Hagley he would leave if she gave him $1,000. He then raped
her again.

Hagley called her friend Juliana to obtain the money for her
attacker. Juliana agreed to give Hagley $100 and said she would
arrive shortly. After the phone call, Turbe made Hagley lie on
the bed and forced her to insert different sex toys into her
vagina.

Sometime later, Juliana called and said that she was moments
from Hagley's apartment. Turbe instructed Hagley to put on a
towel, to tell Juliana that she had just gotten out of the
shower, and not to let her in. Turbe told Hagley that if she
tried to escape, the "both a ahr you going get it." (Trial Tr.
82, Oct. 26, 2004.) Hagley did as she was told and took the
money from Julia without letting her into the apartment. Hagley
later testified that she didn't try to escape for fear of harming
her friend Juliana.

After Juliana left, Turbe again asked who she could call for
money. Hagley called a number of people from work, but without
success. Turbe assured Hagley that he was not joking and then
raped her again. He also forced her to perform oral sex on him.

Afterwards, Hagley received a phone call from her supervisor, Ardean, who said that he would deliver the $1000 to Hagley's apartment. Turbe again told her to put on the towel and told her not to "try anything." When Hagley opened the door, she saw Ardean and a man dressed in blue. Ardean gave Hagley a piece of paper, which Hagley signed and gave back to Ardean. Hagley said to Ardean, "I trust you. I know its all there," and took the envelope.

Turbe counted the money, and told Hagley that he now wanted $5,000 to leave. Turbe thereafter ordered Hagley to lie face down on the bed, and then hit her on the back of the neck. Hagley fought back. Turbe sliced open Hagley's hands and stabbed her in the shoulder, breaking off the knife blade. Hagley pulled off Turbe's bandana. Turbe said, "Now you see my face, now I'm going to have to kill you." Turbe slashed Hagley's throat and slammed another knife into her chest. Turbe then took Hagley's car keys and left the apartment. After Turbe left, Hagley tried to get off the bed. She held a pillow to her chest to stop the bleeding. She found the cover to a white jewelry box and wrote, "Carol Williams' son did this." Hagley was then able to call 911 and report the incident. Hagley survived.

On March 5, 2003, the government of the Virgin Islands (the "Government") filed a twelve-count information against Turbe. The Government thereafter sought and obtain leave to amend the information several times. Count One of the Fifth Amended

Information (the "Information") charged Turbe with kidnapping for
ransom. Counts Two through Four charged Turbe with aggravated
rape in the first degree. Count Five charged Turbe with
attempted murder in the second degree. Count Six charged Turbe
with first degree assault. Counts Seven and Eight charged Turbe
with first degree robbery. Counts Nine and Ten charged Turbe
with possessing a dangerous weapon with the intent to use the
same unlawfully against another. Count Eleven charged Turbe with
third degree burglary. Count Twelve charged Turbe with
unauthorized use of a vehicle.

Turbe's trial was conducted in the Superior Court from
October 24-29, 2004. At trial, Hagley testified on behalf of the
Government. She described the facts set forth above. When first
asked to identify Turbe in the courtroom, Hagley exclaimed,
"Monster." (Trial Tr. 38, Oct. 26, 2004.) The trial judge
immediately called for a ten-minute break. Outside the presence
of the jury, the judge asked the prosecutor:

> THE COURT: Just one thing. Does Ms. Hagley take
> any medication or anything?
>
> [PROSECUTOR]: Yes, Judge.
>
> THE COURT: She has taken medication already, for
> the morning?
>
> [PROSECUTOR]: Well, she has medication. I don't
> know if she has taken medication.
>
> THE COURT: Oh, all right. Find out from her if
> she has taken medication, and whether it's going
> to be able to calm her down.

(*Id.* at 39.) After the break, the judge expressed outrage at the prosecutors because they had personally spoken to the witness during the break. The defense attorney moved for a mistrial. The Court then asked Hagley, "what did . . . [the prosecutors] say to you while you were there?

> A: Did I take my medication? Do I have my medication with me? I told them its in my purse.
>
> . . .
>
> Q: . . . . What else was said?
>
> A: That I should compose myself. That I should - that I'm going to have to identify. . . . That I'm going to have to identify who did - they didn't say who did this to me.
>
> That I'm going to have to identify him.

(*Id.* at 43-45.) The court then denied Turbe's motion for a mistrial.

In addition to Hagley's testimony, the Government also offered the audio recording of Hagley's 911 call, which was admitted into evidence over Turbe's objection.

Following the trial, the jury returned a verdict of guilty on all twelve counts charged against him. On December 15, 2004, Turbe was sentenced to life in prison. Turbe timely appealed his conviction and sentence, raising the following issues: (1) whether the Government presented sufficient evidence at trial to support Turbe's conviction; (2) whether the Superior Court erred in instructing the jury as to the elements of the offense of kidnapping for ransom or money; (3) whether the Superior Court

should have given a lesser included offense instruction; (4)
whether the Superior Court abused its discretion in permitting
the Government to amend the information during the trial; (5)
whether Counts Two through Four of the Information are
duplicitous; (6) whether the Superior Court abused its discretion
in denying Turbe's motion for a mistrial; (7) whether the
Superior Court abused its discretion in admitting the audio tape
of Hagley's 911 call into evidence; (8) whether the Government
violated its duty to disclose material information that is
favorable to the defense; (9) whether the lack of DNA evidence
rendered the evidence insufficient to convict Turbe; and (10)
whether Turbe's sentence was improper.

## II.  **JURISDICTION AND STANDARD OF REVIEW**

This Court has jurisdiction to review final judgments and
orders of the Superior Court. *See* Act No. 6687 § 4 (Oct. 29,
2004) (Act to Establish a Supreme Court.); Revised Organic Act of
1954 § 23A; 48 U.S.C. § 1613a.[2]

"We review de novo questions of law, issues implicating
rights protected under the U[nited] S[tates] Constitution, and
the interpretation of statute[s]. However, we afford the more
deferential clear error review to [the trial court's] factual

---

[2]   The complete Revised Organic Act of 1954 is found at 48
U.S.C. §§ 1541-1645 (1995 & Supp.2000), *reprinted in* V.I. Code
Ann. 73-177, Historical Documents, Organic Acts, and U.S.
Constitution (1995 & Supp.2003) (preceding V.I. Code Ann. tit.
1).

determinations." *Garcia v. Gov't of the V.I.*, 480 V.I. 530, 534
(D.V.I. App. Div. 2006) (citing *Gov't of the V.I. v. Albert*, 89
F. Supp.2d 658, 663 (D.V.I. App. Div. 2001)).

The sufficiency of the evidence supporting an appellant's
conviction is also subject to plenary review. *See United States
v. Taftsiou*, 144 F.3d 287, 290 (3d Cir. 1998); *Castillo v. Gov't
of the V.I.*, 48 V.I. 519, 523 (D.V.I. App. Div. 2006). We review
*de novo* "whether the jury instructions stated the proper legal
standard." *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir.
1995). "We review the refusal to give a particular instruction .
. ." for abuse of discretion." *United States v. Leahy*, 445 F.3d
634, 642 (3d Cir. 2006). We also review a trial court's decision
to allow amendments to a criminal information for abuse of
discretion. *See Gov't of the V.I. v. Torres*, 476 F.2d 486, 491
(3d Cir. 1973).

Duplicity challenges to an information are reviewed *de novo*.
*See United States v. Haddy*, 134 F.3d 542, 547 (3d Cir. 1998). We
also review *de novo* whether a prosecutor's conduct was improper.
*See Turbe v. Gov't of the V.I.*, 2008 U.S. Dist. LEXIS 15635 at *8
(D.V.I. App. Div. Feb. 25, 2008) (citing *United States v. Nelson
Rodriguez*, 319 F.3d 12, 38 (1st Cir. 2003)). The trial court's
ultimate decision to deny a mistrial for abuse of discretion.
*United States v. West Indies Transport, Inc.*, 127 F.3d 299, 311
(3d Cir. 1997). Evidentiary decisions by the Superior Court are

also reviewed for abuse of discretion. *Gov't of the V.I. v. Pinney*, 967 F.2d 912, 914 (3d Cir. 1992).

"When a *Brady* violation is alleged[,] issues of law and fact usually are presented." *United States v. Joseph*, 996 F.2d 36, 39 (3d Cir. 1993). "In that circumstance[,] [an appellate court] review[s] the [trial] court's legal conclusions on a de novo basis and its factual findings under the clearly erroneous standard." *Id.*; *see also United States v. Perdomo*, 929 F.2d 967, 969 (3d Cir. 1991) (citing *Carter v. Rafferty*, 826 F.2d 1299, 1306 (3d Cir. 1987)). "Where the correct legal standard has been used, 'weighing of the evidence merits deference from the [appellate court], especially given the difficulty inherent in measuring the effect of a non-disclosure on the course of a lengthy trial covering many witnesses and exhibits.'" *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006) (quoting *United States v. Thornton*, 1 F.3d 149, 158 (3d Cir. 1993)).

Reversal may be avoided if trial errors are found to be harmless. *See* Fed. R. Crim. P. 52(a)[3] ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *United States v. Hakim*, 344 F.3d 324 (3d Cir. 2003). Where trial counsel fails to object to an error, we reverse only if the asserted violation amounts to "plain error."

[3] Federal Rule of Criminal Procedure Rule 52(a) is made directly applicable to the Superior Court by Rule 7 of the Rules of the Superior Court.

*See* Fed. R. Crim. P. 52(b) (2002) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Davis*, 406 F.3d 162, 164 (3d Cir. 2005).

### III. ANALYSIS

#### A. Kidnapping

Turbe contends that his kidnapping conviction should be reversed because: (1(2) the Superior Court's jury instruction as to the elements of a Section 1052(a) violation was incorrect; (3) the court should have given a lesser included offense instruction.

##### 1. Sufficiency of the Evidence

Turbe contends that the Government presented insufficient evidence at trial to support his conviction for kidnapping for ransom under 14 section 1052(a) of the Virgin Islands Code ("Section 1052(a)"). Turbe did not preserve this issue on appeal,[4] so we will review for plain error.[5] *United States v. Moran*, 413 F.3d 372, 382 (3d Cir. 2005).

---

[4] Turbe declined to move for a judgment of acquittal at the end of the Government's case, and again at the close of his case.

[5] To demonstrate plain error, the appellant must show that: (1) the Court erred; (2) the error was plain; and (3) the error prejudiced the defendant. *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508, (1993). Even if these prerequisites are met, the decision to correct the forfeited error remains within the discretion of the Appellate Court. *Id.* This discretion should only be used when the error "seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

In evaluating the sufficiency of the evidence, the Court is "required to determine whether the evidence and all reasonable inferences which may be drawn therefrom, viewed in the light most favorable to the government as verdict winner, would permit a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt of every element of the offense." *Castillo,* 48 V.I. at 523; *see also United States v. Wolf,* 245 F.3d 257, 261 (3d Cir. 2001) (holding that a conviction may be sustained "if any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence"). The inquiry requires an "examin[ation] the totality of the evidence, both direct and circumstantial." *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003). "[A] claim of insufficiency of the evidence places a very heavy burden on an appellant." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (citation and quotations omitted)); *see also Abiff v. Gov't of the V.I.*, 313 F. Supp. 2d 509, 511 (D.V.I. App. Div. 2004) ("[T]his Court may overturn the appellant's conviction only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt. (citations and quotations omitted)).

To sustain a conviction for a violation of Section 1052, the Government must prove that Turbe: (1) seized, confined or abducted Hagley; (2) with the intent to hold or detain her; (3) for ransom, reward or to exact from any person any money or

valuable thing. *See* 14 V.I.C. § 1052(a); *see also Smith v. Gov't of the V.I.*, 2009 WL 1097527, at *3-4 (D.V.I. App. Div. 2009); *Gov't of the V.I. v. Baron*, 48 V.I. 88, 95 (V.I. Super. Ct. 2006).

In *Government of Virgin Islands v. Berry*, 604 F.2d 221 (3d Cir. 1979), the Third Circuit articulated four factors to consider in determining whether an asportation or detention rises to the level of kidnapping under Virgin Islands law:[6]

> (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

*Id.* at 277. The Third Circuit further explained that "with respect to a statute containing a mandatory life imprisonment term, the statutory language must be narrowly construed." *Id.* at 228.

In the events giving rise to the *Berry* case, there were three separate circumstances that might have constituted a kidnapping. *Id.* at 227-29. The *Berry* Court found that only one of those circumstances amounted to a confinement, abduction, carrying away, inveigling, enticement, decoying or concealment.

---

[6] The *Berry* Court specifically stated that "whether a defendant has engaged in kidnapping as defined by section 1052 of the Virgin Islands Code must be determined in light of these four considerations." 604 F.2d at 227.

*Id.* at 228. That circumstance involved a brief car ride. The
defendants enticed the victim, an acquaintance, into a car by
promising him a ride to town, but instead took him to a beach.
*Id.* at 223. The *Berry* Court rejected the notion that such a car
ride amounted to kidnapping because it was, among other things,
too brief. *See id.* at 228-29.

Here, the evidence presented at trial showed that Turbe held
Hagley at knife-point in her apartment for approximately four to
five hours. Hagley testified that she left work around 12:00
p.m. on February 26, 2003, and went home to have lunch. Shortly
after she got home, she encountered Turbe in her bathroom. After
Turbe left her apartment, Hagley called 911. The 911 call was
made at 5:02 p.m. We have no doubt that Hagley's detention in
her apartment was sufficiently lengthy to constitute a
confinement for kidnapping purposes. The first *Berry* factor
therefore weighs in the Government's favor.

The second *Berry* factor asks whether the kidnapping
"occurred at a different time than the other offense." *Gov't of
the V.I. v. Ventura*, 775 F.2d 92, 93 (3d Cir. 1985). In this
case, Hagley's confinement and the separate offense -- namely, the
rape, assault, robbery, and attempted murder of Hagley - occurred
simultaneously.

The third *Berry* factor asks whether the detention was
inherent to a separate offense. In addition to kidnapping for
ransom, Turbe was charged with aggravated rape in the first

degree, attempted murder in the second degree, first-degree
assault, first-degree robbery, possession or use of a dangerous
weapon, third degree burglary, and unauthorized use of a vehicle.
Significantly, none of those other offenses require that a victim
be held at knife-point and confined in an apartment for several
hours. Hagley's detention was therefore not inherent in the
other crimes for which he was convicted. *Cf. Berry*, 604 F.2d at
228 (reasoning that "some limited confinement or asportation" is
inherent in an assault).

The fourth *Berry* factor calls for a determination whether
the victim was subjected to any greater danger as a result of her
detention, independent of that posed by the separate offenses for
which he was charged. Here, for the entire duration of Hagley's
detention, Turbe held a knife to her body at close range. At any
given point in time during her confinement, Hagley was therefore
faced with the threat that she would be stabbed by Turbe. Turbe
also held a knife to Hagley's back when visitors came to the door
and told her that she would "get it" if she attempted to escape.
Thus, we find that Hagley was subjected to extreme danger during
her detention, and that such danger was distinct from that posed
by the other crimes for which Turbe was charged. This factor
therefore weighs in the Government's favor.

Considering the four-part test set forth in *Berry*, we find
that the evidence adduced at trial, viewed in the light most

favorable to the Government, was sufficient to support the first element of Smith's kidnapping for ransom conviction.

Turbe next argues that the evidence was insufficient to support a conviction because the victim had many opportunities to escape but did not on the "flimsy excuse . . . [that] she did not want to put her friends in harm's way." (Appellant's Br. 19.) Turbe does not argue that the evidence is insufficient to support an element of the offense but instead seeks to muddy the waters by attacking Hagley's credibility. However, it is well settled that an appellate court does not determine a witnesses' credibility. *United States v. Cothran*, 286 F.3d 173, 175 (3d Cir. 2002) ("It is not our role to weigh evidence or determine witness credibility."). Based on Hagley's testimony, a rational jury viewing the evidence in the light most favorable to the Government could find that Turbe intentionally confined Hagley to the her apartment for the purpose of obtaining money from her. Accordingly, we find that the Government presented sufficient evidence to sustain Turbe's conviction under Section 1052(a).

## 2. The Superior Court's Jury Instruction

Turbe, who was charged under Section 1052(a), claims that the Superior Court's jury instruction on the kidnapping offense charged in Count One incorrectly incorporated elements from title 14 section 1051 of the Virgin Islands Code ("Section 1051"). Turbe argues that this incorporation confused the jury and created reversible error. Turbe did not object to the

instruction, so we review the jury instruction for plain error.

*See Gov't of the V.I. v. Fonseca*, 274 F.3d 760, 765 (3d Cir.

2001).

Section 1052(a) states:

> (a) Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion or to exact from any person or entity any money or valuable thing, or any person who kidnaps or carries away any individual to commit robbery, or any person who aids or abets any such act, is guilty of kidnapping for ransom and shall be imprisoned for life.

14 V.I.C. § 1052(a).

Section 1051 provides:

> Whoever without lawful authority confines or imprisons another person within this Territory against his will, or confines or inveigles or kidnaps another person, with intent to cause him to be confined or imprisoned in this Territory against his will, or to cause him to be sent out of this Territory against his will; and whoever willfully and knowingly sells, or in any manner transfers, for any term, the services or labor of any other person who has been unlawfully seized, taken, inveigled or kidnapped from this Territory to any other state, territory or country, is guilty of kidnapping and shall be imprisoned for not less than one and not more than 20 years. This action shall not apply in any case when a parent abducts his own child.

14 V.I.C. § 1051.

The Superior Court's jury instruction for Turbe's kidnapping

charge stated, in pertinent part:

>    Therefore, before you can find the defendant
>    guilty of kidnapping you must first find that the
>    government has proven each and every element of
>    the crime charged beyond a reasonable doubt.
>
>    And these are the elements for kidnapping:
>
>    Element number one, that the defendant
>    unlawfully confined an individual, to wit: Pamela
>    Hagley; element number two, that at the time of
>    the unlawful confinement defendant intended to
>    hold or detain such individual; element number
>    three, the purpose of holding or detaining the
>    individual was to extract money from the
>    individual or from any person; and element number
>    four; that the act occurred on or about February
>    26, 2003.

(Trial Tr. 103-04, Oct. 29, 2004.)

The trial court's instruction closely tracked the language
of Section 1052(a), the statute under which Turbe was charged.
Contrary to Turbe's contention, the instruction does not
improperly encompass the elements of a Section 1051 violation.
We do not find plain error in the Superior Court's jury
instruction for the kidnapping charge. *See, e.g.*, *United States
v. Vampire Nation,* 451 F.3d 189, 204 (3d Cir. 2006) (holding that
the trial court's jury instruction, which tracked the statutory
language, was not plain error); *United States v. Williams,* 299
F.3d 250, 258 (3d Cir. 2002) (holding that the trial court's
instruction tracking the "language of a statute is not plain
error, nor indeed error at all").

## 3. Lesser Included Offense

Turbe next contends that the trial court, *sua sponte*, should
have given a jury instruction on false imprisonment or kidnapping

under Section 1051, which Turbe asserts is a lesser-included offense of Section 1052(a). Because Turbe did not request such an instruction, our review is for plain error.

As a threshold matter, we must determine whether Section 1051 is a lesser-included offense of Section 1052. A lesser-included offense is one that has elements which are a subset of the greater offense and does not contain any elements not required to prove the greater offense. *See Schmuck v. United States*, 489 U.S. 705, 716, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989).

As stated above, to sustain Section 1052 conviction, the Government must prove that the defendant: (1) seized, confined or abducted another; (2) with the intent to hold or detain her; (3) for ransom, reward or to exact from any person any money or valuable thing. *See* 14 V.I.C. § 1052(a); *see also Smith v. Gov't of the V.I.*, 2009 WL 1097527, at *3-4 (D.V.I. App. Div. 2009); *Gov't of the V.I. v. Baron*, 48 V.I. 88, 95 (V.I. Super. Ct. 2006). To succeed on a prosecution for a violation of Section 1051, the Government must prove that the defendant: (1) unlawfully confined or imprisoned another, against her will; (2) with the intent to confine or imprison her. *See* 14 V.I.C. § 1051; *see also United States v. Applewhaite*, 195 F.3d 679, 691 (3d Cir. 1999).

The first two elements of a Section 1052(a) and Section 1051 violation are essentially the same. The only significant

difference between the two statutes is that Section 1052 also requires that the confinement be for ransom, reward, or to extract something of value from another. Because Section 1051 has elements which are a subset of Section 1052(a) and does not contain any elements not required to prove the greater offense, we find that it is a lesser included offense of Section 1052(a). *See, e.g., Gov't of the V.I. v. Josiah*, 641 F.2d 1103 (3d Cir. 1981) (stating that Section 1051 is a lesser included offense of Section 1052(a)).

Now, we turn to the issue of whether the Superior Court erred by failing to instruct the jury on the lesser included offense of simple kidnapping under Section 1051.

Courts that have been confronted with this issue have held that a trial court's failure to give a lesser included offense instruction where such instruction was not requested by the defendant is not plain error. *See, e.g. United States v. Williford*, 309 F.3d 507 (8th Cir. 2002) (trial's court's failure to *sua sponte* submit a lessor included instruction does not constitute plain error); *United States v. Boone*, 951 F.2d 1526, 1541-1542 (9th Cir. 1991) (same). As the United States Court of Appeals for the Ninth Circuit has explained, "[i]n light of the appellant's failure to request such an instruction, the omission must be considered a matter of trial strategy and not error." *United States v. Meyers*, 443 F.2d 913, 914 (9th Cir.1971); *see also United States v. Dingle*, 114 F.3d 307 (D.C. Cir. 1997)

(noting that the failure to request a lesser included instruction is often the result of trial strategy).

In any event, in this case, the evidence that Turbe kidnaped Hagley with the intent to extract money was overwhelming. Indeed, Hagley testified as to Turbe's repeated attempts to steal money from her, and described how he forced her to obtain money from others to give to him. As such, the trial court's failure to give an instruction on Section 1051 was not plain error. *See, e.g., United States v. Atkins*, 58 Fed. Appx. 904, 905-06 (3d Cir. Jan. 23, 2003) (holding that the trial court's refusal to *sua sponte* instruct the jury on the elements of a lesser included offense was not plain error given that the evidence supporting the greater offense was overwhelming) (unpublished).

**B.    Amendments to Counts One through Four of the Information**

Turbe next contends that the trial court abused its discretion by permitting the government to amend Counts One through Four of the information against him during the course of the trial.[7] He claims that such amendments violated his right under the Sixth Amendment of the United States Constitution "to be informed of the nature and cause of the accusation."[8] U.S. Const. amend. VI.

---

[7]    Turbe does not take issue with the pre-trial amendments to the information.

[8]    The language of the Sixth Amendment is specifically made applicable to the Virgin Islands by Section 3 of the Revised Organic Act of 1954, 48 U.S.C. § 1561.

Under Federal Rule of Criminal Procedure 7(e) ("Rule 7(e)"),
"unless an additional or different offense is charged or a
substantial right of the defendant is prejudiced, the court may
permit an information to be amended at any time before the
verdict or finding."[9] Fed. R. Crim. P. 7(e). The requirements of
Rule 7(e) are cumulative. *See Gov't of the V.I. v. Bedford*, 671
F.2d 758, 764 (3d Cir. 1982). In determining whether an
amendment to an information prejudices a substantial right of the
defendant, we look to whether the defendant had adequate notice
of the crime charged against him, or whether he was surprised by
the amendment. *See id.* at 765-66.

The version of the information in effect at the commencement
of the trial -- the Second Amended Information -- charged Turbe
with kidnapping for ransom in Count One as follows: "On or about
February 26, 2003, in St. Thomas, U.S. Virgin Islands, MICHAEL F.

---

[9] As the United States Court of Appeals for the Third
Circuit has explained,

> [t]he difference between amending an information
> and amending an indictment was explained long ago
> by Lord Mansfield: "There is a great difference
> between amending indictments and amending
> informations. Indictments are found upon the oath
> of a jury, and ought only to be amended by
> themselves; but informations are as declarations
> in the king's suit. An officer of the crown has
> the right of framing them originally, and may,
> with some, amend in like manner as any plaintiff
> may do."

*Gov't of the V.I. v. Bedford*, 671 F.2d 758, 765 (3d Cir. 1982)
(quoting *Rex v. Wilkes*, 4 Burr. 2527 (1770)).

TURBE, without lawful authority, confined Pamela Hagley to her residence at Hospital Ground, with intent to hold her and detain her to exact money from her or any person, in violation of [Section 1052(a)]." (Second Am. Information 1, Oct. 14, 2004.) Throughout the course of the trial, the Government was permitted to amend the information three times, ultimately resulting in a Fifth Amended Information. Count One of the Fifth Amended Information charged that,

> On or about February 26, 2003, in St. Thomas, U.S. Virgin Islands, MICHAEL F. TURBE, did confine any individual, by any means whatsoever, with intent to hold or detain such individual, or held or detained such individual, to extract from any person or entity, any money or valuable thing, in that he confined Pamela Hagley to her residence at Hospital Ground, with intent to hold her and detain her to exact money from her or any person, in violation of [Section 1052(a)].

(Fifth Am. Information 1, Oct. 29, 2004.)

Contrary to Turbe's assertions, the amendments to Count One of the information allowed during the course of the trial did not add or change any elements of the offense of kidnapping for ransom. The Second Amended Information sufficiently alleged all three elements of a Section 1052 charge, stating that Turbe; (1) confined Hagley (2) with the intent to hold or detain her; (3) to exact money from any person. The Fifth Amended Information merely restates the allegations contained in the Second Amended Information, and adds a recitation of the elements of a Section 1052 charge in general terms. The amendments did not result in a

new or additional offense being charged in Count One.  Turbe does

not claim that he lacked notice of the offense charged against

him in Count One, or was surprised by the amendments to that

Count during trial.  Furthermore, Turbe has not shown that he has

been prejudiced in any other way by the amendments to Count One.

Accordingly, the Superior Court did not err in allowing the

Government to amend Count One of the Information during the

trial.

With respect to Counts Two through Four, the Second Amended

Information charged that:

> On or about February 26, 2003, in St. Thomas,
> U.S. Virgin Islands, MICHAEL F. TURBE, did
> perpetrate an act of [sexual intercourse/ sodomy]
> with Pamela Hagley, when her resistance was
> prevented by fear of immediate and great bodily
> harm in that he threaten[ed] her with a knife and
> forcibly placed his penis in her [vagina/ mouth]
> against her will, in violation of [title 14,
> sections 1700(c) and 1701(3)].

(Second Am. Information 1-2, Oct. 14, 2004.)  On the first day of

trial, the Superior Court judge suggested that Counts Two through

Four of the Information were missing an allegation to the effect

that the sexual intercourse or sodomy in question must be

perpetrated with an individual who is not the defendant's spouse.

The Government agreed.  Thereafter, the Government moved for

leave to amend Counts Two through Four of the information, and

was permitted to do so.  The Fifth Amended Information, upon

which Turbe was convicted, charged:

> On or about February 26, 2003, in St. Thomas,
> U.S. Virgin Islands, MICHAEL F. TURBE, did
> perpetrate an act of [sexual intercourse/ sodomy]
> with a person not his spouse, to wit: Pamela
> Hagley, when her resistance was prevented by fear
> of immediate and great bodily harm which she had
> reasonable cause to believe would be inflicted
> upon her, in that he used a deadly weapon during
> the commission of this act of rape in the first
> degree, by threatening her with a knife and
> forcibly placing his penis in her [vagina/ mouth]
> against her will, in violation of [title 14,
> sections 1700(a),(c) and 1701(3)].

(Fifth Am. Information 1-2, Oct. 29, 2004.)

Contrary to the apparent belief of the Superior Court and
the Government, the Government was not required to allege or
prove that Hagley was not Turbe's spouse in order to sustain a
conviction for aggravated rape in the first degree under title
14, section 1700(c) of the Virgin Islands Code ("Section
1700(c)"), as was charged in the Second Amended Information.
Indeed, Section 1700(c) provides that "[w]hoever uses a deadly
weapon during the commission of an act of rape as set forth in
section 1701 -- is guilty of aggravated rape in the first degree
. . . ." 14 V.I.C. § 1700(c). Rather, the fact that the victim
is not the defendant's spouse is a requirement for a conviction
under the Virgin Islands statutory rape provision, title 14,
section 1700(a) of the Virgin Islands Code ("Section 1700(a)"),
which is also classified as aggravated rape in the first degree.
*See id.* at § 1700(a).[10]

---

[10] Section 1700(a) provides:

However, there is no indication in the record that the Government actually intended to charge Turbe with statutory rape, as there is no allegation or evidence that Hagley was under the age of thirteen or sixteen, as required by Section 1700(a). Indeed, the final judgment entered against Turbe indicated that he was convicted in Counts Two through Four of violating Section 1700(c), not Section 1700(a). Thus, the amendments made to Counts Two through Four of the information did not result in a new or different offense being charged, but rather had the effect of inserting an additional unnecessary element into those counts. Consistent with these amendments, the trial court instructed the jury that to find Turbe guilty of aggravated rape in the first degree, it must find that the victim was not his spouse. Turbe does not claim that he lacked notice of the Section 1700(c)

---

> Whoever perpetrates an act of sexual intercourse or sodomy with a person not the perpetrator's spouse:
>
> (1) Who is under the age of thirteen, or...
>
> (2) who is under sixteen years of age residing in the same household as the perpetrator, and force, intimidation, or the perpetrator's position of authority over the victim is used to accomplish the sexual act . . . .
>
> . . .
>
> is guilty of aggravated rape in the first degree . . . .

14 V.I.C. § 1700(a).

charge asserted in Counts Two through Four. Nor does he claim to
be surprised by the amendments to those Counts. The amendments
to Counts Two through Four merely placed an additional burden of
proof of the Government, which it was not required to sustain
under Section 1700(c). Under these circumstances, we find that
Turbe was not prejudiced by the amendments to Counts Two through
Four of the information.[11] *Cf. United States v. Johnson*, 462 F.2d
423, 427 (3d Cir. 1972) (holding that the defendant was not
prejudiced by a jury instruction that contained an unnecessary
element for the offense charged because "[t]he judge's charge
merely placed an additional burden of proof upon the Government,
a burden which it was not required to sustain under the
statute").

---

[11] Because we find that Turbe has not been prejudiced by the
erroneous insertion of an additional element in Counts Two
through Four of the information, we find the additional citation
to Section 1700(a) in the Fifth Amended Complaint to be harmless
citation error. *See* Fed. R. Crim. P. 7(c)(3) ("Unless the
defendant was misled and thereby prejudiced, neither an error in
a citation nor a citation's omission is a ground to dismiss the
indictment or information or to reverse a conviction."). We also
reject Turbe's assertion that he was prejudiced because the
discussion in which the trial court suggested to the prosecutor
that she amend the information to include allegations that Hagley
was not Turbe's spouse was conducted in the presence of the jury.
Indeed, while we do not condone engaging in such legal
discussions in front of the jury, the conversation about the
amendments to Counts Two through Four did not expose the jury to
any information that was prejudicial to Turbe. If anything,
discussion in question prejudiced the Government, by suggesting
to the jury that the Government's burden of proof on Counts Two
through Four was higher than that required by Section 1700(c).

## C. Duplicitous Counts

Turbe claims that Counts Two through Four of the Information are duplicitous because each count charges two crimes: aggravated rape in the first degree, in violation of Section 1700(c), and first degree rape, in violation of title 14, section 1701(3) of the Virgin Islands Code ("Section 1701(3)").

The Third Circuit has defined duplicity as "the improper joinder of two or more separate offenses in a single count." *United States v. Tutein*, 122 F. Supp. 2d 575, 577 (3d Cir. 2000).

> A duplicitous indictment raises four concerns. It may: (1) not give the defendant sufficient notice of the nature of the offenses charged; (2) subject the defendant to prejudicial evidentiary rulings at trial; (3) produce an inadequate trial record and prevent the defendant from pleading double jeopardy as a bar to subsequent prosecution; and (4) increase the risk of conviction despite a non-unanimous verdict.

*Id.*

Here, Counts Two through Four of the Information each charge Turbe with aggravated rape in the first degree, in violation of Section 1700(c). The fact that Counts Two through Four necessarily include the elements of the lesser offense of first degree rape under Section 1701(3)[12] does not render those Counts

---

[12] Section 1701(3) requires the Government to prove that the defendant "perpetrate[d] an act of sexual intercourse or sodomy with a person- . . . when the person's resistance is prevented by fear of immediate and great bodily harm which the person has reasonable cause to believe will be inflicted upon the person[.]" 14 V.I.C. § 1701(3). Section 1700(c) requires the Government to prove that the defendant "use[d] a deadly weapon during the commission of an act of rape as set forth in section 1701[.]" *Id.*

duplicitous. *See, e.g., Lewis v. Wood,* 131 F.3d 147 (9th Cir.
1997) (rejecting the defendant's claim that the information for
duplicitous because it charged a lesser included offense in the
same counts as a greater offense); *United States v. De La Garza,*
462 F.2d 304, 149 (D.C. Cir. 1972) (holding that a count of an
indictment charging kidnapping while armed was not rendered
duplicitous by including a charge of kidnapping as a lesser
included offense).

**D.   Denial of a Mistrial**

Turbe next contends that the Superior Court erred in failing
to declare a mistrial based on the prosecution's conversation
with Hagley about her medication while under oath.

We apply a two-part test in assessing prosecutorial
misconduct.  First, we must determine whether the conduct in
question was improper.  If so, we must then ask whether, in the
context of the trial as a whole, the misconduct created
sufficient prejudice as to violate the defendant's due process
rights. *See Marshall v. Hendricks,* 307 F.3d 36, 63-64 (3d Cir.
2002).

While the trial court may exercise its discretion in
regulating the conduct of attorneys at trial, there is no statute
or rule that forbids an attorney conferring with a witness during
trial. *See United States v. Calderin-Rodriguez,* 244 F.3d 977,

---

at 1700(c).

984-85 (8th Cir. 1991) (stating that it is "not inherently
unethical for a lawyer to speak to a witness once the witness has
begun to testify"); *see also United States v. DeJongh*, 937 F.2d 1
(1 st Cir. ("We are aware of no rule or ethical principle
suggesting, in the absence of a court order, that a prosecutor
should refrain from conferring with a government witness before
the start of cross-examination."). Even if the prosecutor's
conduct in this case was improper, the trial judge has
"considerable discretion in determining whether conduct by
counsel is so prejudicial as to require a new trial." *Draper v.
Airco, Inc.*, 580 F.2d 91, 94 (3d Cir. 1978). The trial court
found no prejudice as a result of the prosecution's conduct, and
we find no reason to overrule that considered decision. *See
Fineman v. Armstrong World Indus.*, 980 F.2d 171, 190 (3d Cir.
1992) (the trial judge is entrusted with wide discretion "because
he is in a far better position than we to appraise the effect of
[improper] conduct by counsel").

## E.    Admission of the 911 Tape

Turbe contends that the Superior Court abused its discretion
in admitting the audio tape of Hagley's 911 call into evidence,
and in.

A trial judge has broad discretion in making evidentiary
rulings, and such rulings are given great deference by the
reviewing court. *See Sprint/United Management Co. v. Mendelsohn*,
— U.S. —, 128 S.Ct. 1140, 1144-45, 170 L.Ed.2d 1, (2008) ("In

deference to a district court's familiarity with the details of

the case and its greater experience in evidentiary matters,

courts of appeals afford broad discretion to a district court's

evidentiary rulings."). While relevant[13] evidence may be

admissible, 5 V.I.C. § 777; Fed. R. Evid. 402,[14] the trial judge

may exclude such evidence upon finding that

> its probative value is substantially outweighed
> by the risk that its admission will (a)
> necessitate undue consumption of time, or (b)
> create substantial danger of undue prejudice or
> of confusing the issues or of misleading the
> jury, or (c) unfairly and harmfully surprise a
> party who has not had reasonable opportunity to
> anticipate that such evidence would be offered.

5 V.I.C. § 885; *see also* Fed. R. Evid. 403.[15] Deference to the

trial judge is particularly appropriate in conducting the above

inquiry, since it requires an "on-the-spot balancing of probative

---

[13] "'Relevant evidence' means evidence having any tendency
in reason to prove any material fact." 5 V.I.C. § 771(2); *see
also* Fed. R. Evid. 401 (defining "relevant evidence" as "evidence
having any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or
less probable than it would be without the evidence").

[14] Federal Rule of Evidence 402 ("Rule 402") provides that
"[a]ll relevant evidence is admissible, except as otherwise
provided by the Constitution of the United States, by Act of
Congress, by these rules, or by other rules prescribed by the
Supreme Court pursuant to statutory authority. Evidence which is
not relevant is not admissible." Fed. R. Evid. 402.

[15] Federal Rule of Evidence 403 ("Rule 403") states that,
"[a]lthough relevant, evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, waste of time, or needless
presentation of cumulative evidence." Fed. R. Evid. 403.

value and prejudice, potentially to exclude as unduly prejudicial
some evidence that already has been found to be factually
relevant." *Sprint/United Management Co.*, 128 S.Ct. at 1145.

Here, Turbe argues that the 911 tape should have been
excluded as overly prejudicial because it included an
identification of Turbe by Hagley. However, by the time the 911
call was admitted into evidence, Hagley had already identified
Turbe in court, during her direct examination. Any additional
identification evidence would merely have been cumulative.
Furthermore, the 911 call was highly probative of the charged
offenses, and the evidence did not suggest a decision on an
improper basis. Therefore, the Superior Court did not abuse its
discretion in allowing the introduction of the 911 call.

Turbe further argues that the Superior Court abused its
discretion in allowing the 911 tape to be taken into the jury
deliberation room because the jury would be able to hear Hagley's
identification of Turbe "over and over." (Appellant's brief 35.).
We disagree, and find that the Superior Court did not abuse its
discretion in allowing the tape of the call to go back with the
jury during deliberations. *See United States v. Stone*, 472 F.2d
909, 914 (5th Cir. 1973), *cert. denied*, 449 U.S. 1020, 101 S.Ct.
586, 66 L.Ed.2d 482 (1980) ("Whether . . . evidentiary exhibits
properly admitted should or should not accompany the jury to the
jury room is a discretionary matter for the trial court.").

## F.   *Brady* Challenge

Turbe argues that the prosecution violated its duty to
disclose all evidence favorable to the defendant in violation of
*Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963).   Specifically, Turbe points to a psychological report of
Dr. Rita Dudley Grant from the V.I. Behavioral Services, which
was created in 2000.   Turbe claims that, at some unspecified
point during trial, Turbe's mother told Turbe's attorney about
this psychological examination, which had been conducted when
Turbe was a youth.   Turbe's attorney later obtained the report of
the examination from V.I. Behavioral Services.

In *Brady v. Maryland*, the Supreme Court held that "the
suppression by the prosecution of evidence favorable to an
accused upon request violates due process where the evidence is
material either to guilt or to punishment, irrespective of the
good faith or bad faith of the prosecution." 373 U.S. at 87.
*Brady* mandates that the prosecution provide the defense with not
only exculpatory evidence but impeachment evidence. *United States
v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481
(1985) ("Impeachment evidence . . . as well as exculpatory
evidence, falls within the *Brady* rule."); *Giglio v. United
States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

"Several prongs must be met to establish a Brady violation."
*United States v. Mitchell*, 365 F.3d 215, 254 (3d Cir. 2004). "To
establish a due process violation under Brady, . . . a defendant

must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment." *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005).

With respect to the first prong, the Supreme Court of the United States has held that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). However, the Third Circuit has explained that "*Kyles* cannot be read as imposing a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue." *Pelullo*, 399 F.3d at 216 (quotations omitted). In this case, there is no indication that the prosecution and the V.I. Behavioral Services engaged in a joint investigation or otherwise shared labor and resources. There is also no indication that the prosecution had any sort of control over the V.I. Behavioral Services. Applying the principle set forth in *Pellulo* - that the prosecution is only obligated to disclose information known to others acting on the Government's behalf in a particular case - we conclude that the V.I. Behavioral Services was not a member of the prosecution team. Thus, Turbe has failed to show that the Government suppressed the psychological report of Dr. Rita Dudley Grant from the V.I. Behavioral Services. *See, e.g., Pelullo*, 399

F.3d at 218-19 (holding that the government did not suppress documents produced by the Pension and Welfare Benefits Administration (PWBA), the civil branch of the Department of Labor (DOL), under *Brady* because the PWBA was not part of the prosecution team).

## G.   DNA Evidence

Turbe next contends that the lack of DNA evidence linking Turbe to the crimes charged in this case warrant reversal of his convictions.  However, Turbe has not cited, nor are we aware of, any valid legal authority for the proposition that DNA evidence is required to sustain a conviction for any crime.  We therefore reject Turbe's assertion that a new trial is warranted in light of the absence of DNA evidence in this case.

## H.   Sentencing Violation

Finally, Turbe argues that he was improperly sentenced under Counts Two through Four because, in each of those Counts, he was sentenced for both aggravated rape and first degree rape. However, as we noted earlier, Counts Two through Four only alleged aggravated rape in the first degree.  Additionally, the judgment and commitment entered against Turbe stated that he was convicted of only aggravated rape in the first degree.  No mention was made of first degree rape.  As such, Turbe's argument that he was improperly sentenced for first degree rape is without merit.

## IV. **CONCLUSION**

For the reasons stated above, we will affirm the judgment of

the Superior Court.  An appropriate Order follows.


**Dated: August 6, 2009.**


Copies to:

Hon. Raymond L. Finch
Hon. Juan R. Sanchez
Hon. Julio A. Brady
Leslie Payton, Esq.
Maureen Phelan, AAG
Lydia Trotman
Olga Schneider
Kim Bonelli
Clerk of the Superior Court
Bailey Figler, Esq.